ASAHEL R. DeWOLF vs. JOSEPH BONEE.

Second Judicial District, Norwich, April Term, 1917.

PRENTICE, C. J., RORABACK, WHEELER, SHUMWAY and CASE, Js.

In an action to foreclose a mechanic's lien, the trial court found that the defendant had in good faith paid the full contract price for the materials used in the construction of his house before he had any knowledge that the plaintiff was furnishing material for the building. *Held* that the evidence upon this point was such that the conclusion reached by the trial court was reasonable.

Proof that the owner of a building knew in a general way that the contractor was not doing the work with his own hands nor with his own material, is not enough to impugn the good faith of payments made to the contractor by the owner; it must further appear that he had definite knowledge of the names of those furnishing material and of their relation to the work.

Where material for two buildings is sold to a contractor for a round sum and under one contract, the material-man cannot acquire a valid lien upon one of the buildings without showing how much of the material was used in its construction; for in the absence of that knowledge it becomes impossible to ascertain the amount of his claim.

DeWolf v. Bonec.

The plaintiff's certificate of lien stated that he had furnished materials and rendered services in the construction of "a certain building," and that he claimed a lien "on said building and land on which it stands." In an action to foreclose this lien, it appeared that the property above referred to consisted of two separate buildings owned by different individuals and located upon separate tracts of land. *Held* that such a certificate did not comply with the requirements (§ 4136) of our statute.

Argued April 26th—decided June 14th, 1917.

ACTION to foreclose an alleged mechanic's lien, brought to and tried by the Court of Common Pleas in New London County, *Waller, J.;* facts found and judgment rendered for the defendant, and appeal by the plaintiff. *No error.*

On May 4th, 1914, Alexander Hepburn, a carpenter and builder, submitted the following proposal to the defendant:—

"Hartford, Conn., May 4, 1914.

Mr. Bonee: I agree to furnish all material and labor required to erect and complete the carpenter and mason work on your cottage at Sound View, Conn., for the sum of $1,600.

Alex Hepburn.

This estimate includes painting two coats outside and inside for the first and second story.

Alex Hepburn."

Upon the same day the defendant accepted Hepburn's written proposal. This acceptance and proposal constituted the entire agreement between the parties. No time was fixed upon for the payment of the contract price by the parties. When this agreement between Hepburn and the defendant was made, James D'Atro, a relative of the defendant, owned a lot of land adjoining the defendant's lot at Sound View. Shortly thereafter D'Atro requested Hepburn to build a cottage on his lot, similar in all respects to that which Hepburn

had agreed to build for the defendant. During the construction of the D'Atro cottage, the plans were changed so that his contract price was $1,800. These contracts entered into by the defendant and D'Atro were entirely independent of, and had no connection with, each other. After making this contract Hepburn contracted with the plaintiff for certain building materials which were to be delivered by the plaintiff at Sound View, and which were used in the construction of the cottages for the defendant, and D'Atro. Between May 11th, 1914, and the 22d day of June, 1914, the plaintiff furnished and delivered to Hepburn, on the premises of the defendant and D'Atro at Sound View, building materials for which Hepburn agreed to pay the plaintiff $1,928.44. No payment on this sum was made by Hepburn until July 17th, 1914. Hepburn completed the defendant's cottage on July 6th, 1914. Prior to this time, the defendant had paid to Hepburn on account of his contract $1,300, of which $800 was paid on June 20th, 1914, and $500 was paid on some date subsequent to June 20th, 1914. Both of these payments were made before the defendant's cottage was completed. The balance of $300, due on the defendant's contract, was paid by him to Hepburn on July 17th, 1914. The defendant had no knowledge or information that the plaintiff was furnishing materials for the construction of his cottage until the 6th day of August, 1914, and all the payments above described were made by the defendant without notice of any kind to the plaintiff. Prior to the 6th day of August, 1914, the defendant had paid Hepburn, in good faith, the sum of $1,600, the full contract price for the defendant's cottage.

On July 17th, 1914, Hepburn paid to the plaintiff the sum of $1,000, for which amount credit was given by the plaintiff to Hepburn on his account for materials

furnished which were used by Hepburn in the construction of the defendant's cottage and the cottage of James D'Atro, and there then remained due on account thereof to the plaintiff the sum of $880.

On the 22d day of August, 1914, the plaintiff gave the defendant written notice of his intention to claim a lien for the sum of $880. This sum represented the total balance due from Hepburn to the plaintiff for materials and services furnished for the construction of the cottage of the defendant and for the cottage of D'Atro. On August 22d, 1914, at the time the plaintiff gave the defendant written notice of his intention to claim a lien, there was nothing due from the defendant to Hepburn. The certificate of lien filed by the plaintiff against the premises of the defendant, states that the value of the materials and services furnished for the construction of the defendant's cottage amounts to the sum of $880. It did not appear in evidence as to just what materials were used in the construction of the defendant's cottage other than that plaintiff furnished materials to the value of $1,938.44, used in the construction of both the defendant's and D'Atro's cottages, and that materials were furnished to the value at least of $880, which were used in the construction of the defendant's cottage.

*C. Hadlai Hull,* for the appellant (plaintiff).

*Edward W. Broder* and *John L. Bonee,* for the appellee (defendant).

RORABACK, J. There are numerous exceptions to the finding and to the refusal of the trial court to find certain matters which the appellant claims were established by the evidence; but only one of these merits consideration. This exception relates to the foundation of the plaintiff's cause of action. In this connection it

DeWolf *v*. Bonee.

appears that the plaintiff contends that the court below erred in holding, from the evidence, that the defendant in good faith paid the full contract price for the materials used in the construction of his cottage before he had any knowledge or information that the plaintiff was furnishing materials for his building. The plaintiff insists that this conclusion is not justified by the evidence which is before us, and we are asked to correct the finding so that it will express an opposite conclusion.

An examination of the record discloses that the evidence upon this branch of the case was conflicting, and that the weight of it tended to sustain the defendant's contention that the payments made to Hepburn, the contractor, were made in good faith. The proof relied upon by the plaintiff to show that the payments made by the defendant to Hepburn were not made in good faith, was that the defendant had a general knowledge that some one besides Hepburn was furnishing materials for the construction of his building. This was not enough. "Everybody who contracts for a building must know in a general way that the contractor is not doing the work with his own hands, nor, as a rule, with his own stock of materials. The statute, however, contemplates a degree of knowledge sufficient to give written notice to each person who has furnished materials or rendered services, and that must involve a knowledge of the names of such persons and of their relation to the work. The plain implication of the statute is that only persons so known are entitled to notice." *Hubbell, Hall & Randall Co.* v. *Pentecost*, 89 Conn. 262, 268, 93 Atl. 672. The record discloses that there was evidence from which the court could have reasonably reached a conclusion favorable to the defendant's contention upon the question of good faith, and therefore the motion to correct is denied.

There is another serious objection to the validity of the plaintiff's claim against the defendant. A careful examination of the record discloses that the amount of his claim cannot be ascertained. It appears that the plaintiff did not take the necessary steps for laying the foundation of a claim for a lien against the defendant's property, as he kept no separate account of the materials furnished by him which were used in the construction of the Bonee cottage. The record discloses that the materials for both cottages were sold to Hepburn for a round sum and under one contract. These materials were delivered to Hepburn and used by him in the construction of both cottages. There is nothing to indicate how much was used in the construction of either cottage. There is nothing to show that the amount now claimed to have been delivered for the Bonee cottage was in fact used for any such purpose. The plaintiff's claim does not meet the requirements of our statute, in that it does not appear how much was in fact used in the construction of the defendant's building. In the case of *Larkins* v. *Blakeman*, 42 Conn. 292, 293, this court stated: "The materials were not charged in a separate account, but in a general account, including charges for materials furnished for other buildings. In respect to that, however, perhaps the finding shows with reasonable certainty that the amount claimed was actually expended in the two houses. The value of the materials furnished for each house does not appear. The aggregate value of the materials for the two houses is stated, a single lien is claimed covering both houses and the lots on which they stand, and one certificate only is filed. The record therefore does not show, and it is impossible now to ascertain, the amount furnished for each house. This is a fatal objection." The *Larkins* case was one in which materials were furnished, under separate

contracts, for two houses that were being constructed by the same builder upon adjoining lots, one being commenced about six weeks before the other. No separate account was kept of the materials furnished to either house and it could not be ascertained how much had gone into either.

The plaintiff in his certificate of lien states that he has "furnished materials and rendered services in the construction of a certain building owned by said Joseph Bonee and situated in the town of Old Lyme, on a lot of land belonging to said Joseph Bonee," and then he claims a lien "on said building and land on which it stands." It now appears that the certain "building and land on which it stands" were two separate buildings owned by different parties, and located upon separate tracts of land. It is plain that such a lien does not meet with the requirements of our statute.

There is no error.

In this opinion the other judges concurred.